IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | NO. 03-632 |
| v. | : | |
| | : | |
| IAN NORRIS | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    JUNE 22, 2010

TABLE OF CONTENTS

I.   INTRODUCTION................................................1
II.  BACKGROUND..................................................3
III. ANALYSIS....................................................6
     A. Motion to Dismiss the Indictment in its Entirety........6
        1. Sufficiency of the Indictment.......................7
           a. Applicable Law..................................7
           b. Count I..........................................8
           c. Count II.........................................8
           d. Count III........................................9
           e. Count IV........................................15
        2. Subject Matter Jurisdiction........................18
        3. Due Process Rights.................................20
     B. Motion to Dismiss Based on Principle of Specialty......22
        1. Applicable Law.....................................22
        2. Analysis...........................................23
     C. Motion to Dismiss Based on Paragraph 19(f)............26
IV.  CONCLUSION.................................................29

**I. INTRODUCTION**

          This case arises from a grand jury investigation of an

international conspiracy to fix the price of certain electrical

and mechanical carbon products that were sold in the United

States and elsewhere between 1989 and May 2000, as well as an

alleged scheme to obstruct the grand jury's investigation of that

price fixing conspiracy by tampering with witnesses and withholding or destroying documents relevant to the grand jury investigation.

On September 28, 2004, a federal grand jury returned the Second Superseding Indictment (the "Indictment") against Defendant Ian Norris ("Norris" or "Defendant"). The Indictment contains four counts: (1) Count One alleges a violation of the Sherman Act, 15 U.S.C. § 1; (2) Count Two alleges a violation of 18 U.S.C. § 371 for conspiring to violate two provisions of the witness tampering statute, 18 U.S.C. §§ 1512(b)(1) and (b)(2)(B) (Indictment ¶ 13); (3) Count Three alleges a violation of 18 U.S.C. § 1512(b)(1) for "corruptly persuad[ing]" and attempting to "corruptly persuade[]" other persons with the intent to "influence their testimony in an official proceeding" (Id. ¶ 21); and (4) Count Four alleges a violation of 18 U.S.C. § 1512(b)(2)(B) for "corruptly persuad[ing] other persons" with the "intent to cause or induce those persons to alter, destroy, mutilate or conceal records and documents, with [the] intent to impair their availability for use in an official proceeding." (Id. ¶ 23).

Norris is a national of the United Kingdom. On March 23, 2010, Norris was extradited from the United Kingdom ("U.K.") to the United States to face prosecution on Counts Two, Three, and Four. Under the terms of the U.K. Order for Extradition

Pursuant to Section 93(4) of the Extradition Act 2003, dated September 22, 2008, Norris may not be prosecuted on Count One. On April 8, 2010, Norris appeared before the Court for arraignment on Counts Two, Three, and Four, at which time he entered a plea of not guilty to each of those Counts. Norris now moves to dismiss those Counts in their entirety (docs. no. 25, 38, 42).

In the first motion to dismiss, Defendant argues the entire Indictment should be dismissed, both for failure to state an offense and lack of subject matter jurisdiction (doc. no. 25). In the second motion to dismiss, Defendant argues the Indictment should be dismissed to the extent it violates the principle of specialty (doc. no. 38). In the third motion to dismiss, Defendant argues Counts II and IV should be dismissed to the extent these counts purport to state an offense based on the allegedly faulty paragraph 19(f) of the Indictment (doc. no. 42.) Each motion is analyzed in turn.

For the following reasons, the Court will deny the motions to dismiss.

## II. BACKGROUND

The Indictment alleges, among other things, that between 1986 and October 2002, Norris was an executive of the UK-based The Morgan Crucible Company plc ("Morgan"). In 1998, Norris became the Chief Executive Officer of Morgan. During that same period, Morgan and its subsidiaries were engaged in the sale

of carbon products in the United States (Indictment ¶ 6).

In April 1999, the Antitrust Division was conducting a federal grand jury investigation in the Eastern District of Pennsylvania into possible federal antitrust offenses committed by the Defendant and others involving carbon products sold by Morgan. (Id. ¶ 12.)  In the course of that investigation, the Division served Morganite, Industries, Inc. ("Morganite"), a U.S. subsidiary of Morgan, with a subpoena duces tecum requiring it and its affiliated companies to produce certain business records related to the carbon products industry.  Following service of the subpoena, the Indictment alleges that Norris knowingly and wilfully conspired and agreed with others to corruptly persuade and attempt to corruptly persuade other persons with intent to influence their testimony in an official proceeding, and to corruptly persuade and attempt to corruptly persuade others with intent to cause or induce them to alter, destroy, mutilate or conceal records and documents with intent to impair their availability for use in an official proceeding. (Id. ¶¶ 12, 13.)

The Indictment alleges that, in carrying out this conspiracy, the Defendant and his co-conspirators: (1) provided false and fictitious relevant and material information in response to the grand jury investigation; (2) prepared a written "script" which contained false information which was to be followed by anyone questioned by either the Antitrust Division or the federal grand jury; and (3) distributed the script to others

who had information relevant to the grand jury investigation with instructions to follow the script when answering questions posed by either the grand jury or the Antitrust Division. Moreover, the Indictment alleges that the conspirators removed, concealed, or destroyed from business files any documents which contained evidence of an anticompetitive agreement or reflected contacts between or among competitors, and persuaded, directed and instructed others to do the same. (Id. ¶ ¶ 14-18.)

The Indictment further alleges that to achieve the goals of the conspiracy, the conspirators committed numerous overt acts, including the following: (1) the Defendant, in response to the subpoena duces tecum served on Morganite, asked a co-conspirator to assemble a task force to search through Morgan's business files and remove any documents that contained evidence of Morgan's price-fixing agreement or contacts with competitors; (2) instructed and directed employees of Morgan to remove and conceal or destroy such documents; (3) called several co-conspirators to a meeting in England and discussed the grand jury investigation, explored ways in which to justify or explain the meeting Morgan had with competitors, and prepared false summaries of those meetings, which falsely characterized them as joint venture meetings and which deliberately excluded any mention of the pricing discussions that occurred ("the script); and (4) each of the co-conspirators agreed to follow the script when questioned during the investigation, and they distributed

the script to the Morgan employees who engaged in price fixing.
(Id. ¶¶ 19(a)-(n).)

Moreover, allegedly in an effort to end the U.S.
investigation, a co-conspirator provided the false script to an
executive of a corporate price fixing co-conspirator with
instructions to deliver the script to his co-workers who were
potential witnesses because they had attended price fixing
meetings with Morgan and Morgan had already disclosed their names
to the authorities. The co-conspirator is also alleged to have
instructed the executive to have his coworkers follow the script,
treat it confidentially, and destroy it after it was distributed
and read. Later, Defendant and co-conspirators met with the same
executive to further attempt to persuade him to instruct his
employees to adhere to the false script when giving testimony in
the U.S. investigation as a means to put an end to the U.S.
investigation and prevent it from spreading to Europe. (Id. ¶¶
19(u)-(ee)).

## III. ANALYSIS

### A. Motion to Dismiss the Indictment in its Entirety

Defendant moves to dismiss the Indictment for three
reasons: (1) the Indictment fails to state an offense; (2) the
Court lacks subject matter jurisdiction and (3) extraterritorial
application of § 1512(b) to Norris's conduct would violate his
Fifth Amendment's Due Process rights. Each argument is analyzed
in turn.

## 1. Sufficiency of the Indictment

### a. Applicable Law

A district court may grant a pretrial motion to dismiss an indictment, or a portion thereof, if the indictment's allegations do not suffice to charge an offense. United States v. Panarella, 277 F.3d 678, 685 (3d Cir. 2002). When deciding a motion to dismiss the indictment, the court must accept as true the factual allegations set forth in the pleading. United States v. Besmajian, 90 F.2d 1153, 1154 (3d Cir. 1990). The Third Circuit has held that an indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." U.S. v. Kemp, 500 F.3d 257, 280 (3d Cir. 2007); see also Hamling v. United States, 418 U.S. 87, 117 (1974) ("It is generally sufficient that an indictment set forth the offense in the words of the statute itself provided that 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'") (quoting United States v. Carll, 105 U.S. 611, 612 (1881)). Finally, an indictment "may not properly be challenged by a pretrial motion on the ground that it is not supported by adequate evidence." United States v. Gallagher, 602 F.2d 1139,

1142 (3d Cir. 1979)).

### b. Count I

As stated above, under the terms of the U.K. Order for Extradition, Norris may not be prosecuted on Count One. Although Defendant has not yet specifically moved to dismiss Count One, the parties agree that prosecution on this Count is barred by the terms of the Extradition Order.

### c. Count II[1]

---

[1]     Count II charges the Defendant with violating 18 U.S.C. § 371. The elements of the offense are: (1) that two or more persons agreed to commit an offense against the United States, as charged in the indictment; (2) that the defendant was a party to or a member of that agreement; (3) that the defendant joined the agreement or conspiracy knowing of its objectives to commit an offense against the United States and intending to join together with at least one other alleged conspirator to achieve those objectives; that is, that the defendant and at least one other alleged conspirator shared a unity of purpose and intent to achieve a common goal or objective to commit an offense against the United States; and (4) that at some point during the existence of the agreement or conspiracy at least one of its members performed an overt act in order to further objectives of the agreement. See Third Circuit Pattern Jury Instructions 6.18.371A, December 2009; see also United States v. Uzzolino, 651 F.2d 207, 214 (3d Cir. 1981); United States v. Small, 472 F.2d 818, 819 (3d Cir. 1972).

Count II of the Indictment alleges Norris "knowingly and wilfully conspired and agreed with unnamed co-conspirators, both known and unknown to the Grand Jury, to knowingly and wilfully commit offenses against the United States, that is: (a) to corruptly persuade and attempt to corruptly persuade other persons known to the Grand Jury with intent to influence their testimony in an official proceeding; and (b) to corruptly persuade and attempt to corruptly persuade other persons known to the Grand Jury with intent to cause or induce those other persons to alter, destroy, mutilate or conceal records and documents with the intent to impair their availability for use in an official proceeding; that is, a federal grand jury sitting in the Eastern District of Pennsylvania, conducting a price-fixing investigation

Defendant argues that Count II is insufficient only because Counts III and IV are insufficient.  See, e.g., United States v. McNutt, 908 F.2d 561, 565 (10th Cir. 1990) ("Where the underlying offense agreed upon by the putative conspirators does not constitute a substantive violation of federal law no conspiracy can be effectuated under 18 U.S.C. § 371.")

The Government disagrees and argues that Count II may survive even if Counts III and IV fail because conspiracy to commit an offense and the taking of a single step toward its commission by any of the co-conspirators is sufficient to state an offense.  See United States v. Nelson, 825 F.2d 705, 713 (3d Cir. 1988) (a single overt act by any member of the conspiracy is sufficient to satisfy this element).  Because the Court finds, infra, that Counts III and IV are sufficient, Count II is also sufficient.

### d. Count III[2]

---

of the carbon products industry, contrary to Title 18, United States Code, Section 1512(b)(1) and Section 1512(b)(2)(B), respectively." (Indictment ¶ 13.)

The Indictment alleges that Norris knowingly agreed with unnamed co-conspirators to commit numerous overt acts in furtherance of the charged conspiracy, that the purpose of the agreement was to tamper with witnesses and corrupt persuasion to destroy or conceal documents which were the subject of the grand jury investigation, and that numerous overt acts took place in furtherance of that agreement. (Id. ¶¶ 12-19.)  Count II is therefore sufficient on its face.

[2]     Count III charges Defendant with witness tampering, in violation of 18 U.S.C. § 1512(b)(1).  The elements of the offense are: (1) the defendant knowingly corruptly persuaded or attempted to corruptly persuade some person; (2) the defendant acted with

intent to influence the testimony of that person in an official proceeding; (3) the defendant knew or should have known that the official proceeding was pending or likely to be instituted; and (4) the official proceeding was a federal proceeding. <u>See</u> Third Circuit Pattern Jury Instructions 6.18.1512B, December 2009; <u>see also</u>, <u>United States v. Davis</u>, 183 F.3d 231, 248-50 (3d Cir. 1999); <u>United States v. Richardson,</u> 265 Fed. App'x 62, 65 (3d Cir. Feb. 19, 2008).

Count III alleges that Defendant "corruptly persuaded and attempted to corruptly persuade persons, whose identities are known to the Grand Jury, with intent to influence their testimony in an official proceeding, that is the federal grand jury sitting in the Eastern District of Pennsylvania investigating, among other things, possible federal criminal antitrust violations occurring in the carbon products industry and committed by the defendant and others." (Indictment ¶ 21)

Moreover, the Indictment further specifies that in committing the offense the Defendant: (a) gathered co-conspirators in response to the investigation and that they agreed (i) to falsely character price-discussion meetings they had with competitors as legitimate joint venture meetings and (ii) to prepare written summaries of their price discussion meetings that falsely characterized them as legitimate joint venture meetings (<u>Id.</u> ¶¶ 19(g-k)); (b) Defendant and co-conspirators agreed that when questioned during the investigation they would falsely characterize the price-discussion meetings as joint venture meetings as reflected in the written summaries they prepared (<u>Id.</u> ¶ 19(1)); (c) one of Defendant's co-conspirators (i) met with an executive (CW-1) of a company that had participated in the price-fixing conspiracy to discuss the United States investigation; (ii) gave that executive meeting summaries that falsely characterized meetings their two companies had held; (iii) told that executive the summaries contained the story of what Morgan executives had told the authorities in connection with the investigation; (iv) asked the executive to distribute false summaries to potential witnesses at his company who had attended price-fixing meetings; and (v) told the executive that it would benefit the executive's company if "the recollection" of those individuals who had attended meetings was the same or similar to Morgans (<u>Id.</u> ¶¶ 19(u-z)); and (d) the Defendant then met with CW-1 and discussed the grand jury investigation being conducted by the Antitrust Division, telling CW-1 that he knew CW-1's company was aware of the story that Morgan had told authorities, that CW-1's company's employees should give the same testimony in order to have the U.S. grand jury investigation

### i. Defendant's Argument

Defendant argues that the Indictment's allegations relating to Count III fail for several reasons: (1) Defendant is not alleged to have "persuaded" anyone; (2) Defendant is not alleged to have "corruptly" persuaded anyone; (3) the alleged plan to remove potentially truth-telling employees from Morgan fails to state an offense; and (4) the alleged meeting between Defendant and CW-1 fails to state an offense.

Defendant emphasizes that the Indictment allegations, as they relate to the alleged "script" and "rehearsal" fail to specifically allege that Defendant actually "persuaded" or "attempted to persuade" anyone as to any testimony. Rather, Defendant argues that the Indictment's allegations that he directed co-conspirators to gather Morgan's business records and discussed the grand jury investigation are all perfectly lawful conduct.

### ii. Analysis

Defendant essentially argues that the Indictment fails to allege an offense because the factual allegations contained in the Indictment may have innocent explanations. His arguments are

---

closed, and that employees who, in contrast, might tell the truth should be separated from the company before they were questioned so that the company could not force them to testify (<u>Id.</u> ¶¶ 19(aa-ee)).

an attack on the sufficiency of the Government's evidence, not on the sufficiency of the Indictment itself. At this stage, the Government need not supply the specific evidence through which to show Defendant's intent to obstruct justice.

In this case, the Indictment contains a plain, concise and definite written statement of the essential facts constituting the crime charged. The Indictment sets forth clearly each element of the offense and is sufficient to permit the Defendant to prepare his defense. The Indictment tracks the language of the statutes and then alleges facts that, read together with the charging language, could lead a jury to conclude that Defendant violated the statutes. See United States v. Hull, 456 F.3d 133, 142 (3d Cir. 2005) (citing United States v. Farrell, 126 F.3d 484, 488 (3d Cir. 1997) (holding that "corrupt persuasion" includes "attempting to persuade someone to provide false information to federal investigators.")

First, Defendant argues the Indictment does not allege he "persuaded" anyone to tell a false story because the Indictment alleges he and his co-conspirators "discussed and agreed" to create and tell a story in connection with the grand jury investigation. However, as the Government argues, the following allegations all support the charge that Defendant corruptly persuaded others and conspired to do so. Norris is alleged to have: (1) directed the preparation of a list of price-fixing meetings; (2) called a meeting at which he and his co-

conspirators "discussed" the antitrust investigation; (3)

"agreed" with co-conspirators at a meeting to tell a false story

about what had occurred at their meetings; (4) later "cross

examined" each other on the "materially false and fictitious

information contained in the script"; and (5) urged other

persons, if asked, to tell the false story the co-conspirators

had created.[3]

---

[3]     Defendant primarily relies on <u>Greenidge</u> and <u>Panarella</u>
to argue the Indictment fails to charge an offense.  <u>See</u>
<u>Government of Virgin Islands v. Greenidge</u>, 600 F.2d 437 (3d Cir.
1979) (finding that the assault victim and the potential rape
victim were alleged to be different and the statute required that
they be the same); <u>Panarella</u>, 277 F.3d at 684-85 (rejecting
defendant's argument that the specific facts alleged in the
superseding information did not amount to honest services wire
fraud).  Defendant's reliance on <u>Greenidge</u> and <u>Panarella</u> is
misplaced.

        In <u>Greenidge</u>, the factual allegations could not be
consistent with a statutory element and thus could not support
the charge.  However, here, the factual allegations made in the
Indictment when accepted as true, as they must be, are consistent
with and support each of the offenses charged and thus do not
fall beyond their reach.

        In <u>Panarella</u>, the defendant was indicted for being an
accessory after the fact to a wire fraud scheme.  <u>Panarella</u>, 277
F.3d at 681.  After entering a guilty plea, he challenged the
sufficiency of the charge on the grounds that it failed to allege
that the payments were bribes or that the legislator's actions
were improperly influenced by them.  <u>Id.</u> at 682.  The Third
Circuit disagreed and found that no such allegation of proof is
required and the mere fact that the legislator received the
payments while failing, in violation of state law, to disclose
them before partaking in a discretionary action that benefitted
the payor sufficiently set forth a charge of honest services
fraud.  <u>Id.</u> at 697.  Here, the allegations in the Indictment go
beyond tracking the language of the statute, provide much detail
to the alleged crimes and certainly charge an offense for the
purposes of Rule 12(b)(3)(B).

Second, Defendant insists that the characterization of price-fixing discussions as joint venture discussions could be true in some situations and involve activity that is legal under the antitrust laws. The Indictment specifically alleged that the "defendant and the co-conspirators agreed that they would falsely characterize their meetings with competitors as joint venture meetings rather than truthfully describe them as price discussion meetings" (Indictment ¶ 19(j)). Thus, the Indictment alleges that the meetings discussed in the script were not in fact joint venture meetings and that the Defendant and co-conspirators who created the script did not think they were joint venture meetings. It is for the jury to decide whether the meetings documented in the script in fact involved discussions of joint ventures or discussions of price fixing.

Third, the Indictment's allegations regarding the separation of truth telling employees are relevant to, and further support, the Indictment's allegations that the information in the script was false and that the Defendant and co-conspirators were engaged in an effort to persuade potential witnesses in the grand jury investigation to provide false information.

For these reasons, the Court finds Count III to be sufficient.

## e. Count IV[4]

### i. Defendant's Argument

Defendant argues that Count IV fails to state an offense because: (1) he is only alleged to have instructed

---

[4]      Count Four charges Defendant with violating 18 U.S.C. § 1512(b)(2)(B).  The elements of the offense are: (1) the defendant knowingly and corruptly persuaded or attempted to corruptly persuade some person; (2) the defendant acted with intent to cause or induce that person to alter, destroy, mutilate or conceal and object with the intent to impair the object's integrity or availability for use in an official proceedings; (3) the defendant knew or should have known that the official proceeding was pending or likely to be instituted; and (4) the official proceeding was a federal proceeding.  See Third Circuit Pattern Jury Instructions 6.18.1512B, December 2009; see also United States v. Applewhaite, 195 F.3d 679, 688 (3d Cir. 1999); United States v. Fumo, No. 06-319, 2009 WL 1688482, at *52-53 (E.D. Pa. June 17, 2009).

Count Four alleges Defendant "knowingly corruptly persuaded other persons . . . with intent to cause or induce those persons to alter, destroy, mutilate or conceal records and documents, with intent to impair their availability for use in an official proceeding, that is the federal grand jury sitting in the Eastern District of Pennsylvania investigating . . . possible federal criminal antitrust violations occurring in the carbon products industry and committed by the defendant and others. (Indictment ¶ 23.)

Among other things, Count Four states that in committing the offense: (a) in response to the Morganite federal grand jury subpoena, Defendant instructed others to conceal or destroy records contain evidence of price-fixing agreements or contracts with competitors (Id. ¶¶ 12, 19(a)); (b) Defendant (i) asked a co-conspirator to assemble a task force to remove documents that contained evidence of price-fixing or contacts with competitors; (ii) the co-conspirators assembled a task force and directed its members to conceal or destroy any evidence of price-fixing or contacts with competitors that they found; and (iii) as a result of their efforts, co-conspirators actually concealed or destroyed such evidence (Id. ¶¶ 19(b-d)); and (c) Defendant directed another co-conspirator to instruct a person to conceal or destroy any documents that contained evidence of price fixing or contacts with competitors (Id. ¶ 19(f)).

-15-

removal of Morgan Documents and there is nothing per se unlawful in this conduct; and (2) the Indictment fails to satisfy the "nexus" requirement between the destruction and the specific official proceeding.

## ii. Analysis

As in Count III, the crux of Defendant's claim as to Count IV rests largely on his assertion that the allegations set forth in the overt acts section are insufficient to prove guilt. As explained earlier, dismissal of the Indictment pretrial may not be predicated upon insufficiency of evidence to prove the Indictment's charges.

First, Defendant argues that the Indictment is insufficient because it does not allege that he personally asked anyone to conceal or destroy evidence and he cannot be held responsible for co-conspirators who did. This argument is contrary to well settled case law. Under Pinkerton v. United States, Norris is liable for all reasonably foreseeable acts of his co-conspirators in furtherance of the conspiracy. 328 U.S. 640, 647-48 (1946). Accordingly, he may be liable for his co-conspirators' acts to conceal or destroy evidence in furtherance of their price-fixing conspiracy.

Second, Defendant asserts that the charge fails because whatever documents he may have intended to conceal or destroy were not Morganite documents and thus were not subject to the grand jury's subpoena.

The Court disagrees.  The subpoena itself asked for documents from all "affiliates" and stated it "relate[d] to the manufacture and sale of specialty graphite worldwide," which was defined to include carbon brushes and included specific references to documents reflecting communications with Morgan and documents reflecting meetings and communications between any manufacturers of specialty graphite and specifically called for such communications between Morganite and Morgan that related to a third party manufacturer. (See Def.'s Mot. To Dismiss, Ex. 1; Govt.'s Sur-reply at 7.)  Therefore, a reasonable reading of the subpoena informs that it called for Morgan documents, as well as Morganite documents.

Third, Defendant's contention that he could not have impaired the availability of foreign-based documents because they were beyond the grand jury subpoena power is irrelevant.  The statute requires only that the Defendant's action be taken "with intent to impair the object's integrity or availability for use in an official proceeding."  18 U.S.C. §1512(b)(2)(B).  The offense could have occurred even before the grand jury was empaneled and had authority to issue subpoenas.  See 18 U.S.C. §1512(f)(1) ("an official proceeding need not be pending or about to be instituted at the time of the offense").  Here, the relevance of the Morganite subpoena (which also sought Morgan documents) is that it allegedly informed Defendant of the existence of the federal grand jury's price-fixing investigation.

As explained earlier, it is for the jury to decide if Defendant and his co-conspirators' actions to destroy or conceal documents were taken with intent to impair their availability in the grand jury investigation.

For these reasons, the Court finds Count IV to be sufficient.

## 2. Subject Matter Jurisdiction

Norris argues that the Court lacks subject matter jurisdiction because the Indictment fails to plead a "substantial effect" in the United States.  However, Norris concedes that § 1512(h), by its language, applies to foreign conduct. 18 U.S.C. 1512(h) ("There is extraterritorial Federal jurisdiction over an offense under this section.").  Defendant seems to argue that because the Government does not specifically invoke § 1512(h), the language is insufficient to overcome the presumption against extraterritorial application of federal statutes because it conflicts with principles of international law.

Here, Norris argues that the exercise of congressional authority must still comport with international law.  He relies on Wright-Baker for the proposition that extraterritorial jurisdiction must comport with the requirements of one of the five theories of criminal jurisdiction under international law. United States v. Wright-Barker, 784 F.2d 161, 167 n.5 (3d Cir. 1986), superseded on other grounds by statute, United States v. Martinez-Hidalgo, 993 F.2d 1052 (3d Cir. 1993).  Norris further

argues that the "substantial effect" test is appropriate in this case because his alleged conduct is wholly foreign.  He argues that the Indictment must allege that his foreign conduct had a "substantial effect" on the "official proceeding", i.e. the grand jury investigation, or otherwise in the United States.  Thus, Norris argues that because the Indictment fails to allege his conduct had any substantial effect in the United States, there is no subject matter jurisdiction.

Defendant's reliance on <u>Wright-Barker</u> is misplaced.  As the Third Circuit made clear in <u>Martinze- Hidalgo</u>, an inquiry into international law is only necessary where congressional intent is unclear:

> There is, of course, no doubt the Congress may override international law by clearly expressing its intent to do so. . . . Inasmuch as Congress in section 955a expressed no such intent, we felt obligated in Wright-Barker to apply the nexus test as required by international law. But 46 U.S.C. app. § 1903(d) expresses the necessary congressional intent to override international law to the extent that international law might require a nexus to the United States for the prosecution of the offenses defined in the Maritime Drug Law Enforcement Act.

<u>Martinez-Hidalgo</u>, 993 F.2d at 1056 (internal citation omitted).

Here, as in <u>Martinez-Hidalgo</u>, Congress has made clear its intent to reach conduct outside of the United States.  As such, there is no need to apply principles of international law. <u>See</u> <u>United States v. Yousef</u>, 327 F.3d 56, 86 (2d Cir. 2003) ("As long as Congress has indicated its intent to reach such conduct,

a United States court is 'bound to follow the Congressional direction unless this would violate the due process clause of the Fifth Amendment.'") (citation omitted); see also Pasquantino v. Untied States, 544 U.S. 349, 379 (2005) (J. Ginsburg, dissenting) (Congress "has the sole authority to determine the extraterritorial reach of domestic laws").

Finally, the Court notes that in Wright-Barker the Court did find jurisdiction because the defendant's conduct was intended to affect the United States, regardless of any actual effect. 784 F.2d at 168-69. In this case, Defendant's alleged attempt to obstruct a United States grand jury investigation would have had an intended effect in the United States.

### 3. Due Process Rights

Defendant argues that the extraterritorial application of § 1512(b) would violate his Fifth Amendment's Due Process Clause rights because he did not and could not have had notice that the conduct alleged could result in criminal liability in the United States.

Defendant cites the Arthur Anderson case where the Supreme Court noted, "'[w]e have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress, and out of concern that a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed[.]'" Arthur Anderson,

544 U.S. at 703 (citation omitted).  Norris argues that he lacked fair warning that actions taken in the U.K. to "prepare a defense" in conjunction with alleged co-conspirators would violate U.S. law.  (Def.'s Br. at 13.)  Thus, he claims that he did not have fair notice that these defensive steps could form the basis for substantive violations of United States law.

The Court disagrees.  As noted earlier, the language of the statute explicitly informs the Defendant of its application outside the United States.  <u>See</u> 18 U.S.C. 1512(h) ("There is extraterritorial Federal jurisdiction over an offense under this section.").  Moreover, that the conduct prohibited by the statute constituted a crime should not have come as a surprise to Defendant, given that the same conduct constitutes a crime under U.K. law.  Indeed, the House of Lords found, "we are satisfied that, if Mr. Norris had done in England what he is alleged to have done in counts 2 to 4 [of the Indictment], with the intention of obstructing an investigation being carried out into possible criminal conduct, in regard to fixing prices in the carbon products industry, by the duly appointed body in the United Kingdom, he would indeed have been guilty of offences of conspiring to obstruct justice or of obstructing justice, which could have attracted a sentence of twelve months' imprisonment."[5]

---

[5]     Because Norris is a national of the U.K., the Government sought to extradite him to the United States to stand trial in the Eastern District of Pennsylvania.  On September 29, 2005, the U.K. Home Secretary ordered that he should stand trial. This decision was upheld by the Queen's Bench Divisional Court

See Norris v. Government of the United States of America and Others, [2008] UKHL 16 at ¶ 101.
http://www.publications.parliament.uk/pa/ld200708/ldjudgmt/jd0803
12/norris.pdf.

**B. Motion to Dismiss Based on Principle of Specialty**

Defendant filed a separate motion to dismiss arguing the Indictment violates the principle of specialty (doc. no. 38). He argues the Indictment contains allegations that exceed the scope of the Extradition Order upon which he was brought to the United States.

**1. Applicable Law**

"The principle of specialty requires that an extradited defendant be tried for the crimes on which extradition has been granted, and none other." <u>United States v. Thomas</u>, 322 Fed. App'x 177, 181 (3d Cir. Apr. 16, 2009) (citing <u>United States v. Riviere</u>, 924 F.2d 1289, 1297 (3d Cir. 1991)). The U.S.-U.K. Extradition Treaty expresses this principle as follows:

> A person extradited shall not be detained or proceeded against in the territory of the requesting Party for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted . . . .

U.S.-U.K. Extradition Treaty, art. XII(1) (1972); <u>id.</u>, art. XVIII (2003). "[T]he inquiry into specialty boils down to . . . whether the surrendering state would deem the conduct for which

---

and the House of Lords.

the requesting state actually prosecutes the defendant as interconnected with (as opposed to independent from) the acts for which he was extradited." United States v. Saccoccia, 58 F.3d 754, 767 (1st Cir. 1995).

### 2. Analysis

The Extradition Order ordered Defendant's extradition for the "offenses listed in the attached schedule." (Norris Extradition Order (Sept. 22, 2008).)  The Order avers that Defendant, between April 1, 1999 and May 31, 2000: (1) directed an employee of Morgan to prepare false and misleading material to be provided to a judicial investigation; (2) encouraged executives, officers and employees of Morgan, Morganite and other companies to provide false and misleading evidence to a judicial investigation; and (3) concealed, destroyed or removed information relevant and material to the judicial investigation. (Id.)

Defendant argues that several paragraphs of the Indictment allege conduct beyond May 31, 2000, and therefore do not satisfy the principle of speciality.  Specifically, the conspiratorial period for Count II is alleged to have spanned "[f]rom in or about April 1999, and continuing thereafter until in or about August 2001." (Indictment ¶ 13).  Moreover, several of the alleged overt acts included under Paragraph 19 occurred after May 31, 2000.  Accordingly, Defendant argues those allegations that rely on Paragraphs 19(f) and (t) through (ee)

-23-

should be stricken.

The Court does not agree.  Defendant does not provide, and the Court cannot locate, any legal basis for the Court to strike particular allegations from the Indictment based on timeline objections.  Rather, Defendant's motion presents what is likely an evidentiary issue, rather than a legal issue relating to the law of specialty.  See United States v. Thirion, 813 F.2d 146, 153 (8th Cir. 1987) (the doctrine of specialty "has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state, as distinguished from limiting the jurisdiction of domestic courts to try or punish the fugitive for any crimes committed before the extradition, except the crimes for which he was extradited.") (quotations omitted).  Here, the offenses upon which the Defendant was extradited, and for which he is being tried, are the obstruction of justice offense charged in Counts II, III and IV of the Indictment.

Moreover, upon request for comment by the U.S., the Secretary of State for the Home Department of the U.K. ("U.K. Secretary of State") stated, "Mr. Norris' trial on obstruction of justice charges in the Second Superceding Indictment would not be a breach of specialty, as specialty is interpreted in the United Kingdom in the context of requests for extradition."  (See Letter

of the U.K. Secretary, June 2, 2010).[6]  The U.K. Secretary of
State further stated, "[i]t is not clear to the [U.K.] Secretary
of State why the two draft English law charges were drafted in a
way that limited the dates therein to May 2000," and she
"acknowledge[d] that the extradition request made it clear that
whil[e] the price fixing conspiracy was alleged to have ended in
May 2000, the conduct underpinning the obstruction of justice
allegations was clearly alleged in the request to have continued
thereafter."  Id.  As the correspondence from the U.K. Secretary
of State unequivocally denotes, the U.K. does not regard the
prosecution of Norris on Counts II, III and IV of the Indictment
as a breach of the extradition treaty or the principle of
specialty.

Assuming arguendo that the U.K. had limited the scope
of Norris' extradition to various acts of obstruction of justice
occurring between April 1, 1999 and May 31, 2000, he may
nevertheless be tried for Counts II through IV of the Indictment
because his later acts are interconnected to the acts occurring
prior to May 31, 2000.  The Third Circuit in Thomas rejected
defendant's argument that his prosecution was inconsistent with

_____

    [6]    United States courts have consulted with the sending
state on whether there has been a breach of the principle of
speciality.  See, e.g., United States v. Rauscher, 119 U.S. 407,
415 (1886); United States v. Diwan, 864 F.2d 715, 720-21 (11th
Cir. 1989); Fiocconi v. Attorney General of U.S., 462 F.2d 475,
481 (2d Cir. 1972).

the rule of specialty because his extradition order did not mention the offense of continuing a criminal enterprise relating to his indictment's counts of money laundering and drug offenses. Thomas, 322 Fed App'x at 179. In Thomas, the Third Circuit found the defendant was properly tried and convicted for an offense that was not even mentioned in the extradition order. Here, the Defendant was charged and is being tried on precisely the offenses listed in the extradition order. Accordingly, his trial on obstruction of justice offenses does not violate the principle of specialty.

### C. Motion to Dismiss Based on Paragraph 19(f)

In a separate motion to dismiss (doc. no. 42), Defendant argues that Counts II and IV should be dismissed because paragraph 19(f) of the Indictment does not relate to an "official proceeding". Paragraph 19(f) reads:

> In or about May 1999, the defendant directed a co-conspirator (CC-1) to instruct an employee of one of Morgan's United States subsidiaries to go through his business files and remove and conceal or destroy any documents that contained evidence of Morgan's price-fixing agreement with its competitors or referred to contacts between or among Morgan and its competitors. In or about August 2001, the employee destroyed documents relevant to the grand jury's investigation due to the instructions from CC-1.

(Indictment ¶ 19(f).)

Defendant argues that the alleged instruction to CC-1 had no nexus to the particular "official proceeding" alleged in the Indictment. Defendant claims that in May 1999, that

"official proceeding" comprised only the grand jury investigation of alleged price fixing relating to specialty graphite products and that, in contrast, the alleged instruction to CC-1 could only have concerned documents relating to mechanical carbon products, which were not called for by the April 1999 Subpoena and would not be called for until 28 months later.  Accordingly, he argues there was no official proceeding relating to mechanical carbon products in 1999 and, as such, Counts Two and Four of the Indictment should be dismissed because they both purport to rely on Paragraph 19(f) as the factual predicate for the alleged violations.

However, as the Government notes, the April 1999 Subpoena relates to "all carbon and engineered graphite materials products[]." (Def.'s Mot., doc. no. 42 at 3 (quoting April 1999 subpoena).)  This is a broad definition that could reasonably include mechanical carbon products.  Defendant's argument seems to turn on a technical, and unimportant, definition of carbon products.

Moreover, even assuming _arguendo_ that mechanical carbon products were not being investigated in 1999, the offense of evidence tampering (and the conspiracy charge relating to it) merely requires action intended to impair the integrity of availability of evidence for use in an official proceeding. There is no requirement that any official proceeding actually

exist, thus, the offense can occur even before a grand jury is
empaneled.  See 18 U.S.C. § 1512(f)(1) ("an official proceeding
need not be pending or be instituted at the time of the
offense"); Arthur Anderson, 544 U.S. at 707-708 ("It is, however,
one thing to say that a proceeding 'need not be pending or about
to be instituted at the time of the offense,' and quite another
to say a proceeding need not even be foreseen."); United States
v. Vampire Nation, 451 F.3d 189, 205 (3d Cir. 2006) (finding no
error with jury instruction that read "It is not necessary for
the Government to prove the Defendant knew he was breaking any
particular criminal law, nor need the government prove that the
Defendant knew that the official proceeding was before a federal
grand jury.  An official proceeding includes a proceeding before
a federal grand jury.  The grand jury proceeding need not be
pending or about to be instituted at the time of the offense.").

        Accordingly, the case law instructs that the requisite
nexus can be established by showing the Defendant foresaw that
the documents would likely be called for by an official
proceeding, even if that proceeding was not pending at the time
of the offense.  In this case, the requisite nexus between the
offense and the proceeding may be established regardless of
whether the evidence shows that the allegedly destroyed documents
were explicitly called for by the April 1999 subpoena.  See
Arthur Anderson, 544 U.S. at 707.

**IV. CONCLUSION**

       For the foregoing reasons, the motions to dismiss the Indictment will be denied.  An appropriate order follows.